## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| **STACEY J. HAWKINS,** | * |
| **P.O. Box 18022** | |
| **Baltimore, Maryland 21220** | * |
| | |
|     *Plaintiff,* | * |
| | |
| **v.** | *    Civil Action: 1:16-cv-858** |
| | |
| **RUPP AND ASSOCIATES, INC.** | * |
| **30 East Padonia Road, Suite 400-401** | |
| **Timonium, Maryland 21093** | * |
| | |
|     **Serve on:** | * |
| | |
|     **Newton B. Fowler, III** | * |
|     **Resident Agent** | |
|     **WOMBLE CARLYLE** | * |
|     **250 West Pratt Street** | |
|     **Suite 1300** | * |
|     **Baltimore, Maryland 21201,** | |
|                          * | * |
|     *Defendant.* | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Now comes Plaintiff Stacey J. Hawkins, through her undersigned counsel and for her Complaint alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereinafter "FDCPA"); the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law, § 14-201, *et seq.* (hereinafter "MCDCA"); and the Maryland Consumer Protection Act, Md. Code Ann., Com. Law, § 13-101, *et seq.* (hereinafter "MCPA").

1

2.      Plaintiff Stacey J. Hawkins alleges that the collection practices of Defendant Rupp and Associates, Inc. violate the FDCPA, MCDCA and MCPA in its illegal efforts to collect a consumer debt.

3.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b).

4.      Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

5.      The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

6.      The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

7.      The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp.2d 808 (M.D.N.C. 2011); *Sprinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

8.      To prohibit abuses by debt collectors, the FDCPA, at 15 U.S.C. § 1692e(11), provides that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \*        \*        \*
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is

3

attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

9.      The MCDCA prohibits debt collectors from utilizing threatening or underhanded methods in collecting or attempting to collect a delinquent debt. Md. Code Ann., Com. Law §§ 14–201 to 14–204. Specifically, the MCDCA states that a "person collecting or attempting to collect an alleged debt arising out of a consumer transaction," *id*. § 14–201(b), may not "[e]xcept as permitted by statute, contact a person's employer with respect to a delinquent indebtedness before obtaining final judgment against the debtor;" *Id*. § 14–202(4).

10.      The Maryland Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices," Md. Code Ann., Com. Law § 13–301, and expressly designates as "unfair or deceptive trade practices" those that constitute any violation of the MCDCA. *Id*. § 13–301(14)(iii).

## JURISDICTION AND VENUE

11.      Jurisdiction arises under the FDCPA, 15 U.S.C. §1692k(d) and 28 U.S.C. § 1331.

12.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

13.      Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b), in that the Defendant transacts business in this District and a substantial portion of the acts that give rise to the claim occurred within this District. Additionally, Plaintiff resides within the District of Maryland.

**PARTIES**

14.     Plaintiff Stacey J. Hawkins ("Ms. Hawkins") is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person who has been subjected to attempts to collect a consumer debt allegedly owed on a residential lease that was used for personal, family, or household purposes. Plaintiff was at all times a "consumer" as defined in the MCPA, Md. Code Ann., Com Law, § 13-101(c)(1). Plaintiff is a "person" as that term is defined by the MCDCA and MCPA, Md. Code Ann., Com Law, §§13-101(h) and 14-201(d).

15.     Defendant Rupp and Associates, Inc. is organized under Maryland law and is registered to do business in Maryland and is regularly engaged, for profit, in the collection of debts allegedly owed by consumers and uses the United States Mail in furtherance of its collection of debts alleged to be due another.

16.     At all relevant times Defendant Rupp and Associates, Inc. acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6) of the FDCPA. Defendant Rupp and Associates, Inc. regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

17.     At all relevant times each Defendant acted as a "collector" and "person" as those terms are defined by Md. Code Ann., Com. Law, § 14-201(b) of the MCDCA.

18.     The acts of Defendant Rupp and Associates, Inc. alleged herein were performed by its respective employees acting within the scope of their actual or apparent authority.

## FACTUAL ALLEGATIONS

### A.    The Subject Debt

19.    Plaintiff incurred and later allegedly defaulted on a debt (the "subject debt") allegedly owed to a landlord.

20.    The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5) of the FDCPA, as it allegedly arose out of the lease of an apartment that was used primarily for personal, family, or household purposes.

### B.    Defendants Engages in Abusive and Deceptive Tactics

21.    Within three years of the date this lawsuit was filed, an employee of Defendant Rupp and Associates, Inc. placed several telephone calls to the Plaintiff's employer with respect to a delinquent indebtedness before a final judgment establishing indebtedness had been obtained against the debtor.

22.    Plaintiff initially spoke with an employee of Defendant Rupp and Associates, Inc. named Byron Scott and asked Byron if she could work out a payment plan. Byron Scott said that it was too late to do so because the case had already been filed. Byron told Plaintiff that she should try to come up with the money. Plaintiff said that she did not think she would be able to do so, but that she would see what she could do and would call back in a couple of days.

23.    Byron Scott then asked if "410-866-8080" would be a good phone number for him to use to call Plaintiff. Plaintiff told Byron Scott that phone number was the number for her place of employment, Dominos Pizza, and that she was not able to take personal calls on that number. Byron Scott then asked Plaintiff for a good number that he could use to call her. Plaintiff then gave Byron Scott her cell phone number.

24.    A few days later, Plaintiff was at work when she noticed her cell phone ringing. Plaintiff's employer does not allow her to answer personal phone calls while on duty, so she did not answer the call on her cell phone. Almost immediately after Plaintiff did not answer that call to her cell phone, a phone call came in on the work phone line, and Plaintiff recognized the number displayed on the work phone's caller-ID as the same number that had just rang her cell phone. Plaintiff answered this call to the work line and stated "Thank you for calling Dominos." The caller then identified himself as "Byron" and stated that he was trying to contact Stacey Hawkins. Plaintiff identified herself, and then asked Byron Scott why he had not left her a voicemail on her cell phone. Byron Scott responded that he was not allowed to leave voicemail messages. Plaintiff then stated that she was too busy at work, and that she could not talk to him, and hung up the phone.

25.    Byron Scott called Plaintiff several times on her cell phone over the next several weeks in an effort to collect the subject debt.

26.    When these efforts were not successful, Byron Scott again started calling the Plaintiff at her work number even though he had been told not to do so.

27.    Specifically, when Plaintiff arrived at work in the late afternoon, Lauren Smith, the general manager of the Domino's store and Plaintiff's supervisor, asked Plaintiff: "Who is Byron and why is he trying to call you at work?" Ms. Smith then stated that Byron had been calling the Domino's phone number for several days, asking when Plaintiff would be coming into work. Ms. Smith stated that earlier that day she finally yelled at Byron to stop calling Plaintiff's workplace. Plaintiff told Ms. Smith that these calls were related to a lawsuit and that she had told him not to call her at work.

28.     Byron Scott never disclosed to the Plaintiff that he was employed by Defendant Rupp and Associates, Inc. and Plaintiff believed that he was an employee of a law firm that had filed a collection lawsuit against her.

29.     On about February 23, 2016, the Plaintiff paid the subject debt in full.

30.     On March 10, 2016, Defendant Rupp and Associates, Inc. sent the Plaintiff a letter that failed to include a written disclosure either (1) that Defendant Rupp and Associates, Inc. is a debt collector attempting to collect a debt and that any information obtained will be used for that purpose, or (2) that the communication is from a debt collector.

### C.     **Plaintiff Suffered Actual Damages**.

31.     The disruptive communications from Byron Scott, led Plaintiff to have difficulty falling asleep and would often wake up early consumed by concerns over the debt and how she would pay for the debt the Defendant was attempting to collect.

32.     Plaintiff suffers from chronic pain due to herniated disks in her back. Her inability to sleep through the night exacerbated her back pain, and meant that she did not receive the respite from the pain that a night of sleep usually provided. The lack of sleep and increased exposure to pain affected Plaintiff's performance at work. Plaintiff was distressed by this because she knows that prior to this incident affecting her, she was more efficient at performing the tasks required by her job.

33.     Plaintiff was also embarrassed that her co-workers and work supervisor had to respond to multiple phone calls from Byron Scott related to the subject debt.

## COUNT I

### Violation of the Fair Debt Collection Practices Act
### 15 U.S.C. § 1692, *et. seq*.

34.     Plaintiff incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

35.     As alleged above, in its attempts to collect the aforementioned subject debt, Defendant Rupp and Associates, Inc. violated 15 U.S.C. § 1692e(11) when on March 10, 2016, Defendant Rupp and Associates, Inc. sent the Plaintiff a letter that failed to include a written disclosure either (1) that Defendant Rupp and Associates, Inc. is a debt collector attempting to collect a debt and that any information obtained will be used for that purpose, or (2) that the communication is from a debt collector.

36.     As a direct consequence of the acts, practices and conduct of Defendant Rupp and Associates, Inc., Plaintiff suffered the actual damages alleged above.

### COUNT II
### Violation of the Maryland Consumer Debt Collection Act

37.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

38.     Plaintiff incurred the subject debt primarily for personal, family, or household purposes and are therefore a "consumer transaction" as that term is defined by the Maryland Consumer Debt Collection Act.

39.     As alleged above, in its attempts to collect the aforementioned subject debt, Defendant Rupp and Associates, Inc. violated Md. Com. Code § 14–202(4) when it contacted the Plaintiff's employer with respect to a delinquent indebtedness before obtaining final judgment against the Plaintiff.

40.     As a direct consequence of the acts, practices and conduct of Defendant Rupp and Associates, Inc., Plaintiff suffered the actual damages alleged above.

## COUNT III
## Violation of the Maryland Consumer Protection Act

41.     Plaintiff re-alleges and incorporates by reference the allegations set forth above.

42.     Plaintiff is a consumer as defined by the MCPA, Maryland Code Annotated, Commercial Law § 13-101(c).

43.     Under § 13-301(14)(iii) of the MCPA, unfair or deceptive trade practices also include any violation of the MCDCA.

44.     As a direct consequence of the acts, practices and conduct of Defendant Rupp and Associates, Inc., Plaintiff suffered the actual damages alleged above.

WHEREFORE, Plaintiff, Stacey J. Hawkins, respectfully prays for a judgment against Defendant as follows:

a.     Actual damages of $10,000.00 pursuant to 15 U.S.C. § 1692k(a)(1), Md. Code. Ann., Com. Law. § 14-203; and Md. Code Ann., Com. Law § 13-408;

b.     Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) and Md. Code Ann., Com. Law § 13-408; and

d.     For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

Dated: March 22, 2016                    Respectfully Submitted,


                                         */s/E. David Hoskins*
                                         E. David Hoskins, Esq., Bar No. 06705
                                         THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                                         16 East Lombard Street, Suite 400
                                         Baltimore, Maryland 21202
                                         (410) 662-6500 (Tel.)
                                         davidhoskins@hoskinslaw.com


                                         */s/ Steven B. Isbister*
                                         Steven B. Isbister, Esq., No. 14123
                                         THE LAW OFFICES OF E. DAVID HOSKINS, LLC
                                         16 East Lombard Street, Suite 400
                                         Baltimore, Maryland 21202
                                         (410) 662-6500 (Tel.)
                                         stevenisbister@hoskinslaw.com